540 December 10, 2025 No. 1058

IN THE COURT OF APPEALS OF THE
STATE OF OREGON

In the Matter of R. E. S.,
a Youth.

STATE OF OREGON,
*Respondent,*

*v.*

R. E. S.,
*Appellant.*

Washington County Circuit Court
23JU00280; A183401 (Control), A183408

Michele C. Rini, Judge.

Submitted October 15, 2025.

Shannon Storey, Chief Defender, Juvenile Appellate Section, and Sara F. Werboff, Deputy Public Defender, Oregon Public Defense Commission, filed the briefs for appellant.

Dan Rayfield, Attorney General, Benjamin Gutman, Solicitor General, and Kyleigh Gray, Assistant Attorney General, filed the brief for respondent.

Before Shorr, Presiding Judge, Powers, Judge, and O'Connor, Judge.

O'CONNOR, J.

Vacated and remanded for written findings under ORS 419C.478(1).

**O'CONNOR, J.**

Youth appeals from a juvenile court order and judgment revoking her probation, placing her in the custody of Oregon Youth Authority (OYA), and committing her to a youth correctional facility (YCF). In a combined argument in support of three assignments of error, youth argues that the juvenile court relied on improper grounds when it revoked youth's probation, committed youth to OYA, and ordered youth's placement in a YCF. In her fourth and final assignment of error, youth argues that the juvenile court failed to make adequate written findings to support commitment to OYA under ORS 419C.478(1) in its order, contending that the juvenile court's handwritten findings are illegible.

Youth did not preserve her combined argument in support of assignments of error one through three and does not request plain error review; therefore, we do not address those assignments. ORAP 5.45(1) ("No matter claimed as error will be considered on appeal unless the claim of error was preserved in the lower court[.]"); *State v. Ardizzone*, 270 Or App 666, 673, 349 P3d 597, *rev den*, 358 Or 145 (2015) (explaining that "we ordinarily will not proceed to the question of plain error unless an appellant has explicitly asked us to do so").

Youth also did not preserve her fourth assignment of error, but preservation is properly excused because the asserted error appeared for the first time in the judgment. *State v. D. B. O.*, 325 Or App 746, 747-48, 529 P3d 1004 (2023) (similarly excusing the preservation requirement for a youth committed into OYA when the juvenile court failed to include adequate written findings under ORS 419C.478(1)). Therefore, we address youth's argument on the merits and, as we explain below, conclude that the juvenile court failed to make adequate written findings to support youth's commitment to OYA custody.

The juvenile court has the authority to place an adjudicated youth who is at least 12 years of age in OYA custody and, when it does, it must make written findings:

"The court may, in addition to probation or any other dispositional order, place an adjudicated youth who is at least

12 years of age in the legal custody of the Oregon Youth Authority for care, placement and supervision or, when authorized under subsection (3) of this section, place an adjudicated youth in the legal custody of the Department of Human Services for care, placement and supervision. In any order issued under this section, the court shall include written findings describing why it is in the best interests of the adjudicated youth to be placed with the youth authority or the department."

ORS 419C.478(1). "The statutory requirement for written findings is unambiguous," and "the mandate explicitly requires the findings to describe *why* it is in the *youth's* best interests to be committed to OYA." *D. B. O.*, 325 Or App at 748 (emphases in original; internal quotation marks omitted). We review for legal error whether a juvenile court's written findings satisfy ORS 419C.478(1). *Id*.

The ability for people, most notably the parties themselves and the court of review, to be able to read the required written findings under ORS 419C.478(1) is a basic, common-sense requirement. We have encountered issues with legibility of the juvenile court's written findings requirement before. *See State v. E. S.*, 333 Or App 350, 352, 552 P3d 754 (2024) (observing that "a form containing a single line for best-interests findings is not well suited to making thoughtful written findings").[1] In *E. S.*, we described the written findings in that case as "not entirely legible," but we accepted a transcription provided by the state when the youth did not oppose us doing so.[2] *Id*.

In this case, the juvenile court's written findings provide:

---

[1] ORS 419C.478(4) requires that the juvenile court use "a form approved by the director of the youth authority." The record in this case does not address whether the order used by the juvenile court is such a form.

[2] In *E. S.*, the youth challenged the juvenile court's written findings as inadequate because they failed to create a "nexus between (1) the list of services and youth's issues, and (2) how it would benefit youth to be placed with OYA rather than remaining with family." 333 Or App at 352-53. We agreed with the youth and found the written findings to be inadequate: "They appear to catalogue reasons that youth has proved difficult to maintain in the community—listing services that youth has received and issues that youth has continued to have— rather than describing why it is in *youth's best interests* to be placed with OYA." *Id*. at 353-54 (emphasis in original).



In the opening brief, youth argues that those findings are illegible and that illegible written findings violate ORS 419C.478(1). Youth argues that the legislature required written findings to "ensure a considered, reviewable decision." Illegible written findings violate that requirement, she argues. The state, in its answering brief, provides a transcription of what it believes the written findings say. The state argues that its reading of the findings shows that the juvenile court complied with ORS 419C.478(1). In youth's reply brief, she declines to accept the state's transcription because the statute requires the written findings to be immediately legible, she argues, and because her attorney cannot read the written findings and thus cannot independently verify them. She also argues, in the alternative, that the state's understanding of the written findings fails to adequately explain why commitment to OYA is in youth's best interests.

In *E. S.*, the youth accepted the state's interpretation of the written findings and challenged the adequacy of the written findings on other grounds. *Id.* at 352-53. Here, by contrast, youth does not accept the state's interpretation. We can read some of the words in the handwritten findings and guess at others, based on the context, as follows:

> "Youth has [illegible phrase] not being where youth is supposed [illegible phrase] for [illegible phrase] of sexual boundaries both physically + verbally (including comments discussing + showing a minor pornography), only attend 2 SO Tx sessions, [illegible phrase], does not prioritize Tx, has no other proposal or placement available and would be a safety risk in the community."

Under these circumstances, we cannot accept the state's full interpretation of the written findings.

Illegible written findings violate at least two of the purposes of ORS 419C.478(1). First, the legislature requires a written explanation of why OYA commitment is in a youth's best interests to show that the juvenile court "carefully examined" the "significant ramifications" of the decision. *D. B. O.*, 325 Or App at 750-51. Written findings that cannot be read do not communicate a careful examination of the significant ramifications of the decision. Second, as our previous decisions explain, written findings allow the appellate courts to evaluate as a matter of law whether the juvenile court's written explanation complies with ORS 419C.478(1). *See id.* at 748, 750-51. We cannot review written findings when we cannot read many of the words that comprise the findings. Accordingly, we vacate and remand for the juvenile court to make adequate written findings under ORS 419C.478(1).

We recognize that juvenile courts have busy dockets full of important cases. As we have observed, the form order for OYA commitment appears to make a juvenile court's already difficult job even more difficult by providing only a single line for its written explanation under ORS 419C.478(1). *See E. S.*, 333 Or App at 352 (so recognizing). That lack of space might have contributed to the illegibility of the handwritten findings in this case.

The written findings that we can read fail to "describe[e] why it is in the best interests of the adjudicated youth to be placed with the youth authority." ORS 491C.478(1). They explain why youth violated their probation, list the juvenile court's concerns with youth's behavior in the community and express concern about whether there is another placement for youth that could keep the community safe. Those concerns are insufficient to comply with the child-centered best interest assessment that the legislature requires. *See State v. M. B.*, 341 Or App 334, 341, 575 P3d 219 (2025) (Written findings are insufficient when they list a juvenile court's "concerns with a youth's behavior in the community instead of explaining why placement in OYA custody is in a youth's best interests."); *see also State v. S. D. M.*, 318 Or App 418, 421, 506 P3d 1190 (2022) (Written findings

that explain that a youth violated probation are insufficient.). Written findings may consider a youth's past conduct and comply with ORS 419C.478(1)(c), but they should "consider [a] youth's past conduct with respect" to the youth's needs as context for the youth's best interests. *See State v. N. K. H.*, 341 Or App 78, 82, 572 P3d 349 (2025) (so stating in the context of the juvenile court's verbal findings that appropriately focused on the youth's best interests).

Vacated and remanded for written findings under ORS 419C.478(1).